## No. 13,764.

### AMERICUS WATSON vs. SUCCESSION OF THOMAS BARBER.

#### SYLLABUS.

1. Where in effecting a partition by authentic act, a surviving widower in community specifically admits that the other contracting party is the son and sole heir of his deceased wife, and they reciprocally convey to each other the immovable property of the community, neither such widower, nor his heirs, can, thereafter, for the purposes of a supplemental partition, and without alleging and proving that he was deceived by fraud practiced upon him by such other party, be heard to deny the admission so made.

2. Where an authentic act is resorted to for the purpose of effecting a partition, and it mentions immovable property, and disposes of it, and also mentions movable property, as existing and being subject to partition, but makes no disposition of it, the partition, as effected by said act, will not be held to be complete and final. And the action for a supplemental partition, one of the parties being in possession of all the property to be affected thereby, is barred only by the prescription of thirty years.

3. Where the parties to an agreement fail to express themselves clearly, the court must endeavor, from the aid of circumstances, and by a reasonable construction of their acts, to arrive at their meaning.

A PPEAL from the Sixth Judicial District, Parish of Morehouse—
Hudson, Judge ad hoc.

---

*Andrew Augustus Gumby,* for Plaintiff, Appellee.

---

*Madison & Madison,* for Defendant, Appellant.

---

#### STATEMENT OF THE CASE.

The opinion of the court was delivered by

MONROE, J.  The plaintiff alleges, in substance, that he is the son and

heir of Dorcas, the first wife of Thomas Barber, by her former marriage, according to the custom of slaves, with Woodley' Watson, Sr.; that a community of acquets existed between said Dorcas and Thomas, and that said Dorcas died upon May 20th, 1889. That, thereafter, upon October 3rd, 1889, said Thomas Barber and petitioner entered into an act of partial partition, whereby the real estate which had belonged to the community recently existing between said Thomas and Dorcas was partitioned, but that said partition did not embrace, or relate to, any movable property, rights, or credits which had belonged to said community, and that said movable property has never been partitioned.

The plaintiff further alleges that at the time of the death of Dorcas Barber the said community owned three thousand dollars in cash, a crop worth two thousand dollars, and live stock, farming implements, etc., worth at least one thousand dollars; that all of said property was retained by said Thomas Barber, and converted to his own use, and that, as the son and heir of Dorcas Barber petitioner is entitled to his share of the same. He prays judgment for three thousand dollars, for recognition of his status as son and heir of Dorcas Barber, and for a partition of the property still in the possession of the succession which had belonged to the community between said Dorcas and Thomas Barber. The defendant filed a plea of prescription, which was referred to the merits, and answered, substantially, as follows, to-wit:

She denies that plaintiff is the legal heir of Dorcas Barber, and alleges that said Dorcas was never married to Woodley Watson, Sr., even according to slave custom, but that the slave wife of Woodley Watson, Sr., was named Matilda, and that, in any event, such alleged marriage was inchoate, and was never validated by the parties sustaining the relation of husband and wife after their emancipation, and hence that the same produced no civil effects. And defendant alleges that any admission to the contrary by Thomas Barber was made through and by reason of fraud practiced on him and is not binding on his succession. But, should it be held that plaintiff is the heir of said Dorcas Barber, then, and in the alternative, defendant alleges that the partition made between him and Thomas Barber in 1892 (though made in error so far as Thomas was concerned) was final, and that plaintiff thereby obtained all that he was entitled to, and is estopped by his acceptance of the same, and his acquiescence, during the life of Thomas Barber, to claim anything more.

It appears from the evidence that Thomas and Dorcas Barber lived

together for many years as man and wife; that the plaintiff was always recognized as the son of Dorcas; and that the plaintiff's son, Woodley Watson, was, practically, adopted by Thomas and Dorcas, and lived with them from the time that he was a child. It further appears that Dorcas died in May, 1889, and that, in October of the same year, upon the suggestion of Thomas Barber a contract was entered into between him and Americus Watson, by act in authentic form, from which we make the following excerpt, to-wit:

"STATE OF LOUISIANA,
"Parish of Morehouse.          } *Act of Partition.*

"KNOW ALL MEN BY THESE PRESENTS: That the following contract and act of partition and bargain and sale is this day entered into by and between Thomas Barber and Americus Watson of said parish, viz: The said Barber is the surviving husband, and said Americus Watson the surviving son and sole heir, of Dorcas Barber, dec'd, late of said parish and State. Said Barber and said Watson declared that, at the death of said Dorcas Barber, she and said Tom Barber were the owners of the following community property, to-wit:

"1st. The Ross land, situated * * * containing three acres, more or less. 2nd. The tract known as the Maxwell tract * * * containing 112.61 acres, more or less. * * * 3rd. The Robertson tract * * * containing 160 acres, more or less. 4th. Tax title lands * * *" (three tracts, amounting in the aggregate to 100 acres). "Also some personal property.. And said parties declare and acknowledge that they have entered into the following partition of said property, to-wit: The said Barber declared that he has and, by this act, does give, grant, transfer, and deliver unto said Americus Watson, his heirs and assigns, forever, all his rights, title, interest, claim, and demand in and to the Maxwell tract * * * containing 112.61 acres, more or less * * *". And in consideration of which the said Americus Watson declared that he has given, granted; sold, transferred, released and delivered to said Thomas Barber, his heirs and assigns forever, all his rights, title, interest, claim, or demand in, and to, the remainder of the property belonging to the community which existed between said Thomas Barber and said Dorcas Barber, dec'd, and said Americus Watson hereby obligates himself, his heirs and assigns to forever warrant and defend said Barber in the title to said property, which consists of: 1st. The Ross tract * * * containing three acres, more or less. 2nd. The Rob-

ertson tract * * * containing 160 acres, more or less. 3rd. The tax title·land * * *. To have and to hold, unto the said Barber, his heirs and assigns forever. The crop now on the Maxwell tract belongs to said Thomas Barber, and he is to be allowed to gather the same and not to be interfered with by said Watson, and is to have the use of the cotton houses, cabins, etc., necessary in harvesting and gathering said crop. In faith whereof, etc."

Upon the trial the defendant offered to prove that Americus Watson was born whilst his supposed parents were living, the father with another woman, and the mother with another man, and although the learned judge *ad hoc* ruled against the admission of such testimony, upon the objection of the plaintiff's counsel that defendant is estopped by the admissions contained in the contract which has just been recited, considerable testimony, having no other purpose in view than to show that Americus Watson was incapable of inheriting from Dorcas Barber, seems to have found its way into the record.

The plaintiff, upon the other ·hand, offered testimony to show what personal property, such as live stock, farming implements, etc., was on hand at the time of the death of Dorcas Barber, and this testimony was also excluded, on the ground that plaintiff is estopped by said act of partition. He was, however, permitted to show that Barber had, in bank, at the date mentioned, three thousand one hundred and sixty-two 72-100 dollars, although he told plaintiff that there was no money, and there was judgment in plaintiff's favor for one-half that amount, rejecting his demand in all other respects.

## OPINION.

There was no error in the ruling of the trial judge upon the admissibility of the evidence offered on behalf of defendant. By his explicit admission, in the solemn form of an authentic act, that Americus Watson was the "surviving son and sole heir of Dorcas Barber," Thomas Barber had estopped himself from denying the fact so stated, at least, for any purpose connected with that for which said act was executed, and those claiming under him are likewise estopped. By that act, as we interpret it, Americus Watson, in the capacity· of sole heir of the deceased half owner, granted and conveyed to Thomas Barber all his rights, title, and interest in, and to, the real estate of which Barber was then possessed, except such as was conveyed by Barber to him, and Barber voluntarily consented thenceforth, to hold said prop-

erty, so far as an undivided half interest was concerned, by the title so acquired, and he so held it at the time of his death, and it is that title that the defendant has inherited.

It is true that the defendant alleges, in her answer, that Barber entered into the contract embodied in said act through error, but there was no attempt to show that Watson deceived him in any way, or to show that he did not know all the facts of Watson's past history, which the defendant has attempted to prove. He had been living with Watson's mother for about forty-five years, and was a man of uncommon intelligence, and it was he who proposed the contract, not Watson. It must be presumed, therefore, that he knew what he was about, and that he considered that he was obtaining an equivalent for the property that he parted with, and he could not have been heard to deny his written, authentic admission to that effect, nor can the defendant, who holds under him. And, being bound to that admission, the defendant would also be bound to the admission that Watson was capable of conveying the interest which represented that equivalent, since the two propositions are interdependent upon each other.

"Where the party solemnly admits a fact by a deed under his hand and seal, he is estopped not only from disputing the deed itself, but every fact which it recites."

Hermann on Estoppel, Sec. 615.

"A purchaser admits the vendor's title and right to sell."

Armour vs. Case, 9 Ann. 242.

"Defendant in a petitory action, who has admitted, verbally and in writing, that he holds under plaintiff, cannot dispute his title." Beaumont vs. Covington, 6 R. 189; Morrison vs. Keller, 10 Ann. 542; Webb vs. Deeson, 11 Ann. 84.

"The heirs of a decedent cannot assert that a deed made by a decedent was without consideration. They can assert only such rights as the dead man could assert if living." Jackson vs. Rowell, 87 Ala. 685 (4 L. R. A. 637).

As to the exclusion of the testimony offered on behalf of the plaintiff, we are of opinion that, for reasons which will be stated, plaintiff has sustained no prejudice thereby. It will be observed that the act of partition recites that Thomas Barber and his wife owned, at the time of his death, "The following community property," and then follows a description of the real estate, after which is the statement: "Also some personal property. And said parties, declare and acknowledge that they

have entered into the following partition division of said property, to-wit:" And then follows a description of the real estate, the title to which is vested in Watson; "in consideration of which" (as the act recites) "the said Americus Watson declared that he had given, granted, sold, transferred, released, and delivered to said Thomas Barber, his heirs and assigns forever, all his rights, title, interest, claim, or demand, in, and to, the remainder of the property belonging to the community which existed between said Thomas Barber and said Dorcas Barber, dec'd; and said Americus Watson hereby obligates himself, his heirs and assigns forever, to warrant and defend said Barber in the title to said property, which consists of," etc. (followed by a description of the real estate, other than that which had been conveyed to Watson). So that, by the words *"which consist of,"* considered in connection with the property to which they are applied, it is clear that the comprehensive terms of conveyance previously read must be limited to the real estate specifically described, and we must look elsewhere to ascertain what became of the personal property belonging to the community, the existence of which is recognized. But we look in vain. Beyond the recognition of its existence, it is never again mentioned. The crop on the Maxwell tract is spoken of, but it is claimed by Barber, as his individual property, and the claim is conceded. The act, then, establishes the fact that there is "Also some personal property," which was subject to partition, but it fails to partition it. And we are forced to go outside of the act to find what was done about it. Watson tells us that he subsequently received three mules and fifty-five dollars for his interest in thirty head of cattle, and we think it fairly deducible that he accepted that distribution as a settlement with respect to the movable property, other than the cash in bank. It is demonstrated, therefore, that whilst the partition of the immovable property was effected by means of the written instrument, the partition of the movable property, not including the cash in bank, was effected outside of that instrument, and hence, testimony at this time, as to what it consisted of, would be irrelevant.

Concerning the money in bank, the plaintiff testifies that he was told that there was no money, and we think it likely that he was uninformed as to the amount, and was content to accept the property which Barber offered to him, with the understanding that he was not to press Barber any further. It is true that the witness testified that Barber wanted to marry again, and in this he is corroborated by the fact that Barber did

marry again, but it is also true that until he married, and unless he married, the witness had no claim to any property in his possession as long as he lived. And it is quite within the range of possibility that if Barber had found that a second marriage was likely to prove too expensive, he would have denied himself that luxury, and the plaintiff would have been denied the use and enjoyment of the Maxwell place, and of the mules and the money, of which, as it was, he went into possession immediately.

We are of opinion, then, considering the circumstances as presented, and the fact that the understanding of the parties was not made definite, that a reasonable construction of that understanding leads to the conclusion that Barber was to be left in the enjoyment of such of the community assets as were not included in the partition—i. e., the money —and hence, that while the action for the supplemental partition is barred only by the prescription of thirty years, the succession of Barber is not liable for the interest upon the balance left in his hands, save from judicial demand, as allowed in the judgment appealed from, which judgment is, therefore, affirmed at the cost of the appellant.

Rehearing refused.

Provosty, J., takes no part—this case having been submitted prior to his taking his seat on this bench.