161 So.2d 85 (1964)
Jules CHENEVERT, Plaintiff and Appellee,
v.
Peter J. LEMOINE, Defendant and Appellant.
No. 1040.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1964.
Rehearing Denied March 11, 1964.
Writ Refused April 17, 1964.
*86 David I. Couvillion, Marksville, Henican, James & Cleveland, by Emile J. Dreuil, Jr., New Orleans, for defendant-appellant.
Roy & Roy, by Chris J. Roy, Marksville, for plaintiff-appellee.
Before SAVOY, TATE and HOOD, JJ.
HOOD, Judge.
This is an action for the balance alleged to be due on an unsecured promissory note. The suit was instituted by Jules Chenevert, the payee of the note, against Peter J. Lemoine, the maker. The plaintiff died after the suit was filed and his widow, Mrs. Thelma Plauche Chenevert, was thereupon substituted as party plaintiff, she having been recognized as the decedent's universal legatee.
Defendant resists plaintiff's demands on a number of grounds, the principal ones being failure of consideration and payment. He also contends that he has overpaid the indebtedness represented by the note, and by *87 means of a reconventional demand and a third party action, he seeks to recover from plaintiff and from Bertrand Rabalais, third party defendant, the sum of $182.79, being the amount of the alleged overpayment.
After trial, judgment was rendered by the trial court in favor of plaintiff for the full amount of principal, interest and attorney's fees claimed. Judgment also was rendered rejecting defendant's reconventional demand and his claim under the third party action. Defendant has appealed.
The note upon which the suit is based is dated February 11, 1959, and is payable "On Demand." It is for the principal sum of $9,037.00 and it provides for interest from date and for attorney's fees if not paid when due. Notations on the back of the note show that the sum of $1,184.14 was paid on the note on March 10, 1960, and that $951.31 was paid on January 2, 1961. According to these notations the two payments were credited first to accrued interest and then to the principal due on the note, leaving a principal balance of $7,900.71 due on the date of the last payment. Judgment was rendered by the trial court in favor of plaintiff for this balance, with interest from January 2, 1961, and attorney's fees as provided in the note.
The parties to this suit agree that the note was executed by defendant Lemoine as evidence of the balance due by him on the purchase price of a grocery store, including the land, buildings, furniture, fixtures and stock of merchandise, which he had purchased a few weeks prior to the date of the note. At the time of that sale the title to the real property was vested in plaintiff's stepson, Bertrand Rabalais, whereas all of the furniture and fixtures and the stock of goods in the store were owned by plaintiff Chenevert.
On November 26, 1958, Rabalais and Lemoine entered into a written contract, under the terms of which Rabalais agreed to sell to Lemoine the land, with all of the buildings and improvements on such land, where the store was located. In this agreement Rabalais acknowledged that he had received from Lemoine the sum of $500.00 in cash as "Earnest Money," and the agreement further recites that:
"The consideration of the sale is to be for Twelve Thousand Eight Hundred ($12,800.00) Dollars, less the Five Hundred ($500.00) Dollars received herein as `Earnest Money.' The terms of the sale are to be the assumption by the purchaser of the mortgage presently existing on this property to Future Holders for Four Thousand ($4,000.00) Dollars, dated February 24th, 1958, Seven Thousand ($7,000.00) Dollars in cash and a personal note for the difference."
The sale of this property was completed five days later, on December 1, 1958. On that date Rabalais and Lemoine executed an authentic act of sale, under the provisions of which the real property and improvements were sold and conveyed to Lemoine. This act of sale contains the following stipulation.
"This sale is made for and in consideration of the sum and price of Twelve Thousand Eight Hundred ($12,800.00) Dollars, of which the sum of Seven Thousand ($7,000.00) Dollars is paid cash the receipt whereof is hereby acknowledged and acquittance in full thereof granted, and for the balance, the purchaser assumes that certain mortgage dated February 24, 1958, for $4,000.00, with a balance due on same of $______;"
The defendant testified that the balance due on the mortgage which he assumed was approximately $3,700.00 at the time of the sale. Although the two documents above-described, that is, the contract to purchase and the act of sale, relate only to the real property on which the grocery store was located, the parties agree that for the consideration therein recited defendant Lemoine was to acquire not only the real property but also the fixtures and the stock of merchandise in the store. The evidence *88 shows that Lemoine actually began operating the store as his own business on or about January 1, 1959.
The note on which this suit is based was executed on February 11, 1959, more than two months after the act of sale was completed, and more than one month after Lemoine had taken over the operation of the store. And, as we have already pointed out, the note was made payable to plaintiff, Jules Chenevert, instead of to Rabalais, the vendor in the above-described act of sale.
Defendant admits that he signed the note on which the suit is based and that all of the writing and figures which now appear on the note were on it when he affixed his signature to it. He contends, however, that he did not owe $9,037.00 to plaintiff at that time, and that he did not intend to sign a note for that amount. He admits that he owed a balance of about $1,800.00 on the purchase price of the property at the time the note was signed, and he says he thought the note was for this smaller amount. His only explanation for having signed a note for a much greater amount is that he must not have read it carefully before signing.
Mr. Maxwell Bordelon, the attorney and notary before whom the act of sale dated December 1, 1958, was executed, testified that the note on which this suit is based was signed by defendant Lemoine in his office, in his presence and in the presence of the payee, Jules Chenevert. He testified that he had prepared the contract to purchase and the act of sale which were executed several weeks before the note was made, and that he was thoroughly familiar with the entire transaction. He stated that he filled in the blanks on the note before it was signed, that Lemoine had not paid the $7,000.00 cash consideration which is recited in the deed, and that the note represents the actual balance which was owed by Lemoine on the purchase price of the grocery store at that time. Mr. Bordelon's testimony, in part, is as follows:
"A. When it was discussed in my office, it was understood that he (Lemoine) was signing a note for $9,000.00, to Jules, for the stock and the furnishings in the store.
* * * * * *
"A. * * * My recollection is this * * *. Peter did not pay the $7,000.00 that is why the note was made for $9,000.00. I remember that distinctly." (Emphasis added.)
The defendant testified that he had paid the $7,000.00 cash consideration recited in the act of sale, "some by cash and some by check." He states that although he did not make a cash payment when the sale was completed, he had paid that amount to Chenevert, in cash, before the act of sale was executed. According to his testimony, he made from two to four cash payments to Chenevert, at different times before the sale, each payment being in excess of $2,000.00, but he was unable to recall when these payments were made or to produce any witnesses who could support his testimony to that effect. He claims to have obtained receipts for each such payment, but says that the receipts were destroyed by fire when the store burned sometime after the purchase had been completed. No receipts were produced by defendant, but he did produce three cancelled checks showing the following payments: $500.00 to Rabalais on November 26, 1958; $1,500.00 to Adolph Mayeaux on January 6, 1959; and $1,500.00 to Jules Chenevert on January 20, 1959. The $500.00 payment obviously represented the "Earnest Money" referred to in the contract to purchase. Adolph Mayeaux was operating the grocery store at the time of the sale, but he was not a party to the transaction, and although the payment made to Mayeaux apparently was for a portion of the stock of merchandise, we are unable to conclude from the evidence that this payment should be credited to the indebtedness which defendant owed to Chenevert. Defendant explains that the $1,500.00 payment to Chenevert also was for the stock in the store, and he contends that the payment should be applied as a credit on the indebtedness *89 represented by the note. This payment to Chenevert, however, was made about three weeks before the note was signed by defendant, and the parties obviously knew of that payment at the time the note was filled out and executed.
The trial court held, "* * * it is inconceivable to the Court, that Mr. Lemoine did not know what he was signing or that he thought the note was for a different amount. The Court feels that he was fully aware of what he was doing * * *." We agree with the conclusion reached by the trial judge that at the time the note was executed Lemoine knew that it was made out for the principal sum of $9,037.00, and that he intended to execute a note for that amount.
Defendant contends, however, that even though he did knowingly execute a note for $9,037.00, he owed plaintiff only $1,800.00 and he has since paid plaintiff the full amount of that indebtedness. He argues, therefore, that the note is unenforceable as to any claim in excess of the amounts paid because of a failure of consideration and because the debt has been extinguished by payment.
We stated recently in Laborde v. Dauzat, La.App. 3 Cir., 158 So.2d 637, that:
"Under the laws of this State every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. LSA-R.S. 7:24. A plaintiff suing on a negotiable instrument therefore, is not required to produce any proof of consideration when he introduces the instrument into evidence, and this remains true in spite of the fact that the defendant in his answer may have alleged lack of consideration. In such a case the burden rests on the defendant of going forward with the evidence and rebutting the prima facie case in favor of plaintiff. If during the trial of the case, however, the defendant offers evidence which casts doubt upon the reality or the amount of the consideration, the presumption that the note was given for value is rebutted and the burden shifts to the plaintiff to prove consideration by a preponderance of the evidence. Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257; Eskew v. Walker, La.App. 3 Cir., 127 So.2d 210; and Home Finance Service of Lafayette Parish v. Black, La.App. 3 Cir., 131 So. 2d 547."
The trial judge concluded that defendant Lemoine did not pay $7,000.00 in cash to either Rabalais or Chenevert at the time of the sale, as defendant contends, and that Lemoine was indebted to Chenevert for the sum of $9,037.00 at the time the note was executed. In his excellent reasons for judgment the trial court said:
"Apparently, Bertrand Rabalais, needed funds more than Jules Chenevert. The consideration for the sale was worded as above quoted, and Jules Chenevert gave to Bertrand Rabalais, cash or value for his share, and he, himself, took the personal note which was later executed by Peter Lemoine, after he took possession of the store, merchandise, etc., on February 11, 1959. This was done after a full and detailed inventory of the stuff, in which all parties participated. So, the note was made payable to Jules Chenevert instead of to Bertrand Rabalais and Jules Chenevert or to Bertrand Rabalais, alone. At any rate, Chenevert became the owner when the note was executed and Bertrand Rabalais, stepped out of the picture.
* * * * * *
"* * * The testimony of the defendant, as to how he made payment of the total price in the purchase, was very unsatisfactory. He claimed payment by very large sums in cash, which the Court could not believe, without witnesses and without receipts. * * *
"As stated above, the vendor, Bertrand Rabalais acknowledged receipt of this sum. He was paid for his *90 interest by Jules Chenevert who took the purchaser's note. The purchaser, Peter J. Lemoine, agreed to this; he agreed to pay Jules Chenevert instead of Bertrand Rabalais. Mr. Chenevert agreed to take a personal note of Peter Lemoine, instead of a mortgage note. This fact was testified to by Mr. Maxwell J. Bordelon, who also stated that he had told Mr. Chenevert that he was foolish in doing this.
"* * * The Court concludes that Mr. Chenevert paid these two people and he took the note in question. This was all agreed to. Peter Lemoine initialed the note where Chenevert was made payee. The scales of justice weigh heavily in favor of Mr. Chenevert's widow. To permit Lemoine to defeat his note obligation, under these facts, would be unconscionable."
We agree with the conclusions reached by the trial court. In our opinion the evidence presented by defendant is not sufficient to overcome the presumption created by LSA-R.S. 7:27 that the note was issued for a valuable consideration. By introducing the note in evidence plaintiff made out a prima facie case for the judgment which she seeks, and defendant has failed to rebut that prima facie case in favor of plaintiff.
Defendant contends, however, that the trial court erred in considering parol evidence which tends to vary or contradict the provisions of the authentic act of sale dated December 1, 1958, wherein the seller, Rabalais, acknowledged receipt of $7,000.00, in cash, as a part of the consideration for the property sold. As pointed out by defendant, the trial court considered the testimony of Mr. Maxwell Bordelon to the effect that the $7,000.00 cash payment recited in that deed was not actually paid by Lemoine, although the deed recites that Rabalais had received that amount. We also have considered Mr. Bordelon's testimony in arriving at the same conclusion, although the promissory note itself (which is not parol evidence) also constitutes convincing proof that the recited consideration had not been paid by Lemoine.
We agree with defendant that under the law of this State the authentic act is full proof of the agreement contained in it as against the contracting parties, that as between the parties, and in an action to amend or defeat the authentic act, parol evidence will not be admitted against or beyond which is contained in the act, and that a vendor's acknowledgment in an authentic act of sale that he received a stipulated sum in cash as consideration of the transfer is conclusive as to him unless he alleges and proves fraud, error or force. See LSA-C.C. Articles 2236, 2237 and 2276; Templet v. Babbitt, 198 La. 810, 5 So.2d 13; Johnson v. Johnson, 191 La. 408, 185 So. 299; Robinson v. Britton, 137 La. 863, 69 So. 282; Barre v. Hunter, La.App.Orl., 181 So. 674; Cahow v. Hughes, La.App. 1 Cir., 169 So. 801; Gary v. Bullock, 206 La. 231, 19 So.2d 120; Beard v. Nunn, 172 La. 155, 133 So. 429; Wimbush v. Jones, La.App. 2 Cir., 136 So.2d 704 (Cert. denied); Harang v. Smith, 229 La. 865, 87 So.2d 10; and Girod v. Vines, 23 La. Ann. 588.
We do not think the rules above stated are applicable here, however, for several reasons. One reason is that the parol evidence which we and the trial court have considered does not necessarily tend to vary or contradict the act of sale. In the deed Rabalais acknowledges that as a part of the consideration for the property "Seven Thousand ($7,000.00) Dollars is paid cash the receipt whereof is hereby acknowledged and acquittance in full thereof granted." Insofar as the vendor Rabalais is concerned, this stipulation may be conclusive that he did receive that payment. But the trial court has not held otherwise. It held merely that the payment was made by Chenevert and not by Lemoine. Although there may be an inference from the language used in the *91 act of sale that this payment was made by Lemoine, there is no statement to that effect in the document, so the parol testimony and the conclusion of the court is not in conflict with any provisions of the authentic act of sale. Another reason why there was no error in considering parol evidence in this case is that the parol evidence rule set forth in Article 2276 of the LSA-Civil Code applies only in actions between the parties to the authentic act and their privies, and not in actions between the parties to the act and third persons. Resweber v. Jacob, La.App. 3 Cir., 125 So.2d 241; Smith v. Chappell, 177 La. 311, 148 So. 242; White v. Machen, La.App. 2 Cir., 178 So. 736; Commercial Germania Trust & Savings Bank v. White, 145 La. 54, 81 So. 753. In the instant suit the plaintiff Chenevert is a third person, not a party to the authentic act, and accordingly the parol evidence rule does not apply to him. And finally, the parol evidence in the instant suit was not introduced for the purpose of contradicting or denying the authentic act, but instead it was introduced for the purpose of proving consideration for the promissory note on which this suit is based. As stated in Hale v. Fornea, La.App. 1 Cir., 79 So.2d 124, "The real and true consideration to support a contractual obligation may always be shown by parol evidence, even though the consideration may be different than that expressed in the act, Cleveland v. Westmoreland, 191 La. 863, 186 So. 593; Dartez v. Meaux, La.App. 1 Cir., 44 So.2d 147, see also Hebert v. Lazarus `Some Problems Regarding Price in the Louisiana Law of Sales' 4 La.Law Review 378, 388-396, although such parol evidence might not be admissible to defeat the validity of the contract."
Defendant argues further, however, that although Chenevert was not a party to the act of sale he is a "privy" to the contract because he and Rabalais were partners in the grocery store, and the sale thus involved partnership property in which plaintiff had an interest. It is argued that since plaintiff was a privy to the contract the parol evidence rule should be applied in this case. We find no merit to that argument. The authentic act of sale relates only to real property and all parties agree that the real property was owned solely by Rabalais. There is nothing in the evidence to indicate that a written partnership agreement between Chenevert and Rabalais ever existed, and in the absence of such a written agreement the partnership could not own real property. LSA-Civil Code Article 2836. Hayes v. Muller, 245 La. 356, 158 So.2d 191. Also, while the evidence does show that a partnership may have existed between Chenevert and Rabalais at one time, it also indicates that that partnership was dissolved and ceased to exist before the sale was made, and that Rabalais sold the real property to defendant by a written act of sale while Chenevert sold the fixtures and stock of merchandise to him by oral agreement.
While it is true that Chenevert was interested in the transaction in that he, by a separate oral agreement, also conveyed to defendant the fixtures and stock of merchandise in the store and he advanced the money which was paid to Rabalais for the real property, we find that he was not a "privy" to the authentic act of sale dated December 1, 1958. In our opinion, therefore, the parol evidence rule does not apply to him under the circumstances presented here.
Defendant also contends that the trial court erred in denying a motion filed by him prior to trial in which he sought to compel Chenevert and Rabalais to elect which of two causes of action would be prosecuted.
This action was instituted solely by Chenevert for judgment on an unsecured promissory note. While this suit was pending an entirely separate action was instituted by Rabalais to rescind the act of sale dated December 1, 1958, for nonpayment of the purchase price. Defendant then filed a motion demanding that the plaintiff in *92 each suit be compelled to elect which remedy to prosecute. The basis for the motion was that the two demands were contradictory, Rabalais demanding on the one hand that the sale be rescinded for nonpayment of the purchase price, and Chenevert on the other hand seeking to have the sale maintained by demanding payment of the note which allegedly represents a part of the purchase price for the property sold. The motion to compel plaintiffs to elect was denied and the two suits were consolidated for trial. After trial, judgment was rendered dismissing the suit to rescind the sale which had been instituted by Rabalais, and no appeal has been taken from that judgment of dismissal. In this suit, as has already been pointed out, judgment was rendered in favor of plaintiff.
We find no error in the judgments rendered by the trial court. We agree that an action to enforce a contract is inconsistent with an action to rescind the same contract, and when two such actions have been instituted by the same plaintiff then he may be required to elect which of the two inconsistent demands will be prosecuted. LSA-C.C.P. Articles 462 and 464. In our opinion, however, a motion to elect cannot be maintained where the two actions, although inconsistent, are instituted by different plaintiffs, as is the case here. We think the trial judge properly consolidated the two cases for trial, and there is no inconsistency between the judgment rendered in the Rabalais suit and the one rendered here.
Prior to trial defendant filed exceptions seeking to have the suit dismissed or to require plaintiff Chenevert to implead Rabalais, or the alleged partnership which existed between Chenevert and Rabalais, as parties plaintiff in the suit. As a basis for these exceptions defendant contends that a partnership existed between Chenevert and Rabalais at the time of the sale and that only the partnership is entitled to maintain this action against defendant.
We have already pointed out that the partnership which existed between Chenevert and Rabalais was dissolved prior to the sale. But even if the partnership had not been dissolved prior to the sale, it obviously was dissolved at the time of the sale. The note on which this suit is based was executed long after that partnership was dissolved, so clearly there is no merit to defendant's contention that either Rabalais or the partnership has an interest in the note or that either is a necessary party to this action.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.